JOHN W. HUBER, United States Attorney (#7226)
JOHN K. MANGUM, Assistant United States Attorney (#2072)
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Attorneys for the Defendants

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LIVING RIVERS and SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>Plaintiffs,<br><br>v.<br><br>KENT HOFFMAN, in his official capacity as Deputy State Director, Division of Lands and Minerals, UNITED STATES DEPARTMENT OF THE INTERIOR; and UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>Defendants. | Case No. 4:19-cv-00057-DN-PK<br><br>**DEFENDANTS' MOTION TO DISMISS ACTION**<br><br>Honorable David Nuffer<br>Magistrate Judge Paul Kohler |

This action challenges decisions of the Defendants to suspend recently-issued oil and gas leases so that more environmental analysis can be done to decide whether or how the leases may proceed in light of a new court opinion requiring such additional analysis in similar circumstances. The thrust of the complaint in this action alleges that it was improper to suspend the leases without first doing other environmental analysis under the National Environmental Policy Act ("NEPA").

Defendants move to dismiss this action because this Court lacks subject matter jurisdiction based on Plaintiffs' lack of Article III standing. Additionally, Plaintiffs have failed to state a claim for which any relief can be granted because the lease suspension decisions do not require NEPA compliance. Therefore, as discussed further below, this Court should dismiss this action without prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

## BACKGROUND

Under 30 U.S.C. § 226, the Bureau of Land Management ("BLM") conducted oil and gas lease sales in March and September, 2018.[1] An "oil and gas lease, by itself, does not cause a change in the physical environment . . . [because] the lessee must submit site-specific proposals . . . [where] [e]ach action is subject to continuing NEPA review" before being able to disturb the surface of the land within the area of the oil and gas lease.[2] Ground disturbing activities are not authorized by the lease itself but may occur, if at all, only after the lessee receives additional approval from BLM following further environmental review. Therefore, the lease itself does not authorize surface disturbing activity. Furthermore, a suspension of operations and production ("SOP") suspends all lease operations, thereby further assuring that no ground disturbing

---

[1] Plaintiffs' Complaint only challenges suspensions of leases included in Utah BLM's March and September 2018 Lease Sales. Complaint Docket no. 2 ¶¶ 49 & 54. On September 3, 2019, Plaintiffs moved this Court to file an Amended Complaint to include leases included in BLM's December 2018 Lease Sale. Docket no. 12-1 ¶ 62. This Motion to Dismiss addresses only the Plaintiffs' original Complaint (Complaint) as this Court has not yet ruled on Plaintiff's Motion for Leave to file Amended Complaint. However, Plaintiffs' Proposed Amended Complaint only seeks to include additional lease suspensions from the December 2018 Lease Sale. Docket no. 12 at 2. The underlying factual and legal arguments otherwise remain unchanged. The legal arguments against the original Complaint presented in this Motion to Dismiss would apply equally to Plaintiffs' Proposed Amended Complaint. Defendants, in consultation and concurrence with counsel for Plaintiffs, request that the Court refrain from ruling on Plaintiffs' Motion for Leave to File Amended Complaint until after the Court considers and rules on Defendants' Motion to Dismiss. The Parties have agreed that they will recognize the Court's ruling on this Motion to Dismiss, regardless of which Party prevails, as applying equally to the Proposed Amended Complaint. So if the Motion to Dismiss is denied, Defendants do not oppose the proposed amendment of the complaint, but do oppose amendment as futile if the Motion to Dismiss is granted.

[2] *Park Cnty. Res. Council, Inc. v. U.S. Dep't of Agric.*, 817 F.2d 609, 622 (10th Cir. 1987), *overruled on other grounds by Marsh v. Ore. Nat. Res. Council*, 490 U.S. 360, 385 (1989).

activities are authorized without additional approval from BLM following further environmental review.

## I.      MARCH 2018 LEASE SALE

Eight of the leases at issue in this litigation were offered, sold, and issued at Utah-BLM's March 2018 oil and gas lease sale ("March 2018 Lease Sale").[3] SUWA filed a protest of BLM's final leasing decision, which BLM denied.[4] SUWA subsequently appealed the protest denial to the Interior Board of Land Appeals ("IBLA").[5] The IBLA is part of the Office of Hearings and Appeals and determines, "as fully and finally as might the Secretary [of the Interior],"[6] "decisions rendered by Departmental officials relating to . . . the use and disposition of public lands and their resources . . . ."[7] The IBLA exercises de novo review over oil and gas leasing decisions.[8] Thus, "[a] decision of the [IBLA] shall constitute final agency action . . . ."[9] Upon appeal of a BLM decision to the IBLA, BLM cannot alter its decision on the matter unless the IBLA returns jurisdiction to BLM.[10]

## II.     SEPTEMBER 2018 LEASE SALE

Sixty of the leases at issue in this litigation were offered, sold, and issued at Utah-BLM's September 2018 oil and gas lease sale ("September 2018 Lease Sale").[11] SUWA filed a protest

---

[3] Docket no. 2 ("Complaint") ¶ 49.

[4] Complaint ¶ 50.

[5] Complaint ¶ 50.

[6] 43 C.F.R. § 4.1.

[7] 43 C.F.R. § 4.1(b)(3).

[8] *See, e.g.*, *Wyoming Outdoor Council*, 160 IBLA 387, 388 (2004).

[9] 43 C.F.R. § 4.403.

[10] *See, e.g.*, *McMurray Oil Co.*, 153 IBLA 391, 393 (2000) (holding that BLM could not alter the BLM's decision approving an oil and gas project while decision was before the IBLA).

[11] Complaint ¶ 54.

of BLM's final leasing decision, which BLM denied.[12] SUWA subsequently appealed the protest denial to the IBLA.[13]

### III. *WILDEARTH GUARDIANS v. ZINKE* DECISION AND BLM LEASE SUSPENSIONS

On March 19, 2019, the United States District Court for the District of Columbia decided *WildEarth Guardians v. Zinke*, (*Zinke*)[14] wherein it ruled that BLM had failed to quantify greenhouse gas emissions that were the reasonably foreseeable effect of oil and gas development on public land in Wyoming.[15] After having time to analyze the *Zinke* court's decision and to compare its reasoning with the environmental analyses supporting the March and September 2018 oil and gas lease sales in this action, BLM determined that it needed to suspend the leases issued from the March and September 2018 Lease Sales.[16] In light of this determination, BLM and SUWA took the following actions for the leases in each of the lease sales at issue in this litigation:

A. **March 2018 Lease Sale**: BLM filed a motion in SUWA's March 2018 Protest Decision Appeal to return jurisdiction from the IBLA to BLM.[17] This motion was granted,[18] and BLM subsequently issued lease suspensions effective August 1, 2019, including the eight leases issued in March 2018 challenged in this litigation.[19]

---

[12] Complaint ¶ 55.

[13] Complaint ¶ 55.

[14] 368 F.Supp. 3d 41 (D.D.C. 2019).

[15] *Id.* at 67-71.

[16] Sample Lease Suspension Letters, attached hereto as Exhibits 1-3. A representative sample letter is provided from a lease issued and subsequently suspended after each of the March, September, and December 2018 lease sales.

[17] Complaint ¶ 52.

[18] Complaint ¶ 52.

[19] Complaint ¶ 65.

4

B. **September 2018 Lease Sale**: On May 15, 2019, SUWA sent BLM a letter regarding its September 2018 Protest Decision Appeal highlighting the *Zinke* decision and BLM's recent Motion to Return Jurisdiction and requested that BLM set-aside the September 2018 Lease Sale Environmental Analysis ("EA") and accompanying Finding of No Significant Impact ("FONSI").[20] On May 30, 2019, SUWA filed a Motion to Withdraw its Appeal, and the IBLA granted that motion on June 4, 2019.[21] BLM subsequently issued lease suspensions effective July 1, 2019, including the sixty leases issued in September 2018 challenged in this litigation.[22]

According to BLM's suspension decisions, BLM will conduct further NEPA analysis in light of the *Zinke* decision. Thereafter, BLM will issue a new decision as to each lease that may: (1) void the lease; (2) modify it; or (3) lift the suspension without modification.[23]

IV. PRESENT LITIGATION

Plaintiffs filed this lawsuit challenging the lease suspensions described above pleading a single cause of action: Violation of NEPA: Failure to Prepare NEPA Document Prior to Issuing Lease Suspension Decision.[24] Specifically, Plaintiffs allege that BLM did not prepare a Categorical Exclusion ("CX"), an Environmental Assessment ("EA"), or an Environmental

---

[20] Complaint ¶ 56.

[21] Complaint ¶ 57.

[22] Complaint ¶ 62. As referenced in FN 1 above, this Motion to Dismiss addresses only the Plaintiffs' original Complaint. However, Plaintiffs' Proposed Amended Complaint (Docket no. 12-1) seeks to include a challenge to the suspension of fourteen additional leases issued after BLM's December 2018 lease sale. These additional fourteen lease suspensions are similarly situated as the lease suspensions described herein from the March and September 2018 lease sales, including BLM's rationale for suspending those leases.

[23] Declaration of Kent Hoffman dated October 3, 2019, attached hereto as Exhibit 4.

[24] Complaint ¶¶ 70-82.

Impact Statement ("EIS") prior to suspending any of the March or September 2018 leases and therefore acted arbitrarily and capriciously, in violation of the APA, 5 U.S.C. § 706(2)(A).[25]

Defendants move to dismiss for want of subject matter jurisdiction for the following reasons. First, this Court lacks jurisdiction because the Plaintiffs lack Article III standing. Second, Plaintiffs fail to state a claim upon which relief may be granted because the lease suspensions do not constitute a major federal action requiring NEPA compliance. Thus, this action should be dismissed without prejudice.

## ARGUMENT

### I.   PLAINTIFFS LACK STANDING TO BRING SUIT

Plaintiffs cannot carry their burden to show they have standing under Article III. "The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."[26] "Plaintiffs carry the burden of establishing the elements of standing."[27] Additionally, when a plaintiff is not himself the object of the government action or inaction he challenges, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." [28]

To determine whether Plaintiffs have standing, this Court should engage in "careful judicial examination of a complaint's allegations."[29] To have standing, Plaintiffs must prove: (1) they have suffered an "injury in fact"; (2) a causal connection between their injury and

---

[25] Complaint ¶¶ 78-82.

[26] *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996) (citation and quotations omitted).

[27] *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450 (10th Cir. 1994).

[28] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).

[29] *Allen v. Wright*, 468 U.S. 737, 752 (1984).

Defendants' conduct; and (3) that a favorable decision will likely redress Plaintiffs' alleged harm.[30] As shown below, Plaintiffs fail to establish the elements of standing.

### A. Plaintiffs Have Failed to Prove Standing Because They Have Not Suffered an Injury In Fact.

Plaintiffs lack standing because they have not suffered an injury in fact. Where, as here, Plaintiffs allege that Defendants violated NEPA, Plaintiffs must prove two elements to establish an injury in fact.[31] First, Plaintiffs must show that in making the decision without following NEPA's procedures, the agency "created an increased risk of actual, threatened, or imminent *environmental harm*."[32] This harm must be concrete and particularized.[33] Second, Plaintiffs must prove "that this increased risk of environmental harm injures [their] concrete interest."[34] Plaintiffs' complaint fails to establish either requirement to prove an injury in fact under Article III.

> 1. Plaintiffs have not established "actual, threatened, or imminent environmental harm."

Plaintiffs' complaint does not articulate what actual, threatened, or imminent environmental harm Defendants' decision has allegedly created. To plead an injury in fact under NEPA, Plaintiffs must allege how Defendants' decision at issue "created an increased risk of

---

[30] *Madigan*, 14 F.3d at 1450.

[31] *Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1237 (10th Cir. 2012).

[32] *Id.* (emphasis in original).

[33] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way").

[34] *Id.*

actual, threatened, or imminent" harm to the "air, land, or water."[35] This threat must be "actual or imminent, not 'conjectural' or 'hypothetical.'"[36]

This Court's decision in *Moyle Petroleum v. LaHood*,[37] provides instruction in analyzing injury in fact. There, a plaintiff brought a NEPA action challenging a United States Department of Transportation and Federal Highway Administration decision to approve a transportation project that would result in the modification of an intersection.[38] In its Complaint, Moyle alleged that the federal defendants did not fully comply with NEPA procedures and that it would suffer environmental harm as a result.[39] Specifically, Moyle coupled its allegations of procedural harm with allegations of degradation of air quality, water quality, and other environmental concerns.[40] However, this Court found that Moyle failed to specify how the federal action created an increased risk of actual, threatened, or imminent harm to the environment.[41] Instead, this Court categorized Moyle's environmental concerns as "general grievances," which "lack Article III standing."[42]

Similarly, Plaintiffs fail to specify how BLM's decision to suspend the leases in order to conduct additional NEPA analysis creates an increased risk of actual, threatened, or imminent harm to the environment. First, as in *Moyle*, Plaintiffs' stated claim that "SUWA's members also

---

[35] *Wyoming*, 674 F.3d at 1237; *Metro. Edison Co.*, 460 U.S. at 773.

[36] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

[37] 969 F. Supp. 2d 1332, 1336 (D. Utah 2013)

[38] *Id.* at 1334.

[39] *Id.*

[40] *Id.* at 1336.

[41] *Id.*

[42] *Id.*; *See also United States v. Hays*, 515 U.S. 737, 743 (1995) ("we have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power").

have a substantial interest in seeing that BLM complies with its obligations under federal laws including NEPA . . . ."[43] constitutes nothing more than a general grievance which lacks Article III standing. Second, Plaintiffs fail to specify how BLM's decision to suspend the leases to conduct additional NEPA analysis creates an increased risk of actual, threatened, or imminent harm to the environment. Plaintiffs rely only on a conclusory statement that BLM's allegedly uninformed decisions "will have lasting effects to public lands and resources at issue in this litigation."[44] While not only conclusory, Plaintiffs' alleged harm is speculative and conjectural and in no way demonstrates how BLM's actions create an increased risk of actual, threatened, or imminent harm to the environment. To the contrary, BLM's suspension effectively prohibits any ground disturbing activities or development, thus negating any potentially-related environmental harm. Additionally, Plaintiffs fail to demonstrate how BLM's commitment to additional NEPA analysis would lead to uninformed decision-making. Because Plaintiffs fail to demonstrate an increased risk of actual, threatened, or imminent harm to the environment, they are unable to sufficiently allege an injury in fact.

> 2. Plaintiffs also have failed to show how their alleged harm injures their concrete interest.

Plaintiffs have also failed to show how their alleged environmental harm injures Plaintiffs' concrete interest. In support of their stated interest, Plaintiffs reference Ray Bloxham's visits to the subject areas, his plans to return to those areas, and his enjoyment of "the scenic views and largely untrammeled nature of the areas, including abundant wildlife, solitude and cultural and archaeological resources on his visits." Plaintiffs completely fail to demonstrate how

---

[43] Complaint ¶ 20.

[44] Complaint ¶ 20.

BLM's decision to suspend the leases to complete additional NEPA analysis injures Plaintiffs' above-stated interests. In fact, the suspensions prohibit any lease operations and allow BLM to issue a new decision on the leases following additional NEPA analysis. Plaintiffs' stated interests are actually protected by BLM's actions. To the extent Plaintiffs are concerned about future development on any particular parcels, such concern is premature because until BLM completes its NEPA analysis and issues a new decision on the leases, any harm premised on future development is purely speculative, and the issue is not ripe for adjudication.

Additionally, Plaintiffs claim a procedural injury in that they were unable to comment on BLM's lease suspension decisions before they were made.[45] However, Plaintiffs again fail to demonstrate what concrete interest is harmed by their inability to comment on the lease suspensions. Allegations of procedural injury, or a deprivation of a procedural right, "without some concrete interest that is affected by the deprivation" is insufficient to create Article III standing.[46] Plaintiffs, unlike the lessees who are the object of the governmental action, are not directly affected by the lease suspension decision. Plaintiffs' interests are in the protection and preservation of the environment, and those interests are not harmed by BLM's decision to suspend the challenged leases. Therefore, Plaintiffs' alleged procedural harm is insufficient to establish Article III standing.

      B.      <u>Plaintiffs fail to show a causal connection between their alleged injury and the Federal Defendant's conduct.</u>

Because Plaintiffs fail to demonstrate an injury in fact, they necessarily fail to show a causal connection between their alleged injury and the Defendant's conduct. However, assuming

---

[45] Complaint ¶ 20.

[46] *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

*arguendo* that this Court finds an injury in fact, Plaintiffs fail to demonstrate the necessary causal connection. Plaintiffs' complaint contains references to a 2015 report prepared by The Wilderness Society,[47] a related Congressional request to the United States Government Accountability Office ("GAO"),[48] and a resulting GAO report ("GAO Report"),[49] which all analyze broad and generalized concerns about oil and gas lease suspensions. However, these broad and generalized concerns fail to show any causal connection between Plaintiffs' claimed injury and Defendants' specific conduct. A review of the cited materials suggests that TWS and Congress primarily criticized the potential for lessees to abuse the suspension process to prolong the terms of otherwise unproductive or uneconomical leases.[50] However, those concerns do not apply to the suspensions at issue in this case. In fact, the TWS report states that "[s]uspension of federal leases can serve legitimate purposes, such as giving the BLM time to conduct thorough environmental review of proposed projects and development without causing delays to leaseholders."[51] These suspensions now challenged were not requested by the lessees but were instead imposed by the BLM to conduct additional NEPA analysis. These are the very types of suspensions which the TWS report describes favorably.

These generalized concerns over the potential abuse by lessees of the oil and gas lease suspension process fail to show a connection between Defendants' specific conduct (a suspension of operations and production in order to complete additional NEPA analysis) and any

---

[47] Complaint ¶ 43 and Exh. 2, Docket no. 2-3.

[48] Complaint ¶ 43 and Exh. 3, Docket no. 2-4.

[49] Complaint ¶ 44 and Exh. 4, Docket no. 2-5.

[50] *See* Docket no. 2-3 at 1 and 8 ("oil and gas operators have made a habit of exploiting loopholes known as 'suspensions.'") ("[r]ight now, it's too easy for industry to get leases into suspension and to keep them there"); *see also* Docket no. 2-4 at 3 ("I am concerned that the BLM may be regularly approving lease suspension *requests* for reasons beyond what Congress envisioned when this authority was established.") (emphasis added).

[51] Docket no. 2-3 at 8.

injury claimed by the Plaintiffs. In fact, at least one of the materials cited by Plaintiffs to support these generalized concerns actually views the BLM's actions here favorably,[52] and none of the materials cited raise any specific concern that lease suspensions ordered by BLM for the purpose of conducting additional NEPA related environmental reviews cause the type of harm alleged by Plaintiffs.[53]

      C. <u>Plaintiffs fail to show how a favorable decision will likely redress the alleged harm.</u>

Finally, Plaintiffs fail to show how a favorable decision in this matter will redress the alleged harm. As explained above, Plaintiffs' primary interest in the subject matter leases is a concern for environmental protection.[54] However, Plaintiffs' request as relief that this Court vacate BLM's lease suspension decisions and enjoin BLM from suspending the leases at issue until it conducts NEPA analysis for a suspension decision.[55] Plaintiffs fail to demonstrate how this requested relief would redress the alleged harm and protect Plaintiffs' stated interests in environmental protection. In fact, such relief would remove the environmental protections currently provided by the lease suspensions. As stated above, the suspensions prevent any lease development and ground disturbing activities. Without the suspensions in place, lessees could presumably begin at least some lease development, and Plaintiffs' interests to prevent

---

[52] *See* Docket no. 2-3 at 8 ("[s]uspension of federal leases can serve legitimate purposes, such as giving the BLM time to conduct thorough environmental review of proposed projects and development without causing delays to leaseholders.")

[53] At most, the GAO Report finds that BLM's monitoring of oil and gas lease suspensions in general could be improved to better manage and track lease suspensions. *See* Docket no. 2-5 at 29-30. However, to the extent Plaintiffs allege a potential harm resulting from the possibility that BLM may fail to properly monitor the specific lease suspensions challenged in this action is purely speculative and fails to demonstrate a connection between BLM's action and the harm alleged.

[54] *See* Complaint ¶ 20.

[55] Complaint at 20.

development could consequently be harmed, not protected, by a favorable decision. Therefore, Plaintiffs fail to demonstrate how a favorable decision will likely redress the alleged harm.

### II. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Assuming *arguendo* that Plaintiffs have standing to bring this suit, this Court should dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs fail to state a claim upon which relief may be granted. A complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief.[56] The claim alleged must be "plausible on its face."[57] A complaint that pleads facts that are merely consistent with liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"[58] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[59] Where the facts pleaded "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'shown' -- 'that the pleader is entitled to relief.'"[60] A complaint is also required to give fair notice of the nature and basis of the claims such that the opposing party may defend itself effectively.[61]

Plaintiffs fail to state a claim upon which relief may be granted because BLM's decision to suspend the leases to conduct additional NEPA analysis does not constitute a major federal action requiring NEPA compliance. NEPA mandates certain procedures for major federal actions

---

[56] Fed. R. Civ. P. 8(a)(2).

[57] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[58] *Id.* (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S.544, 557 (2007)).

[59] *Id.* at 678 (*citing Twombly*, 550 U.S. at 555).

[60] *Id*. at 679 (*citing* Fed. R. Civ. P. 8(a)(2)).

[61] *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *Aguilar v. Homecomings Fin. Network*, No. 3:11-cv-0142-LRH-VPC, 2011 WL 1628033 *2 (D. Nev. Apr. 28, 2011) (*unpublished).

that may significantly affect the quality of the human environment.[62] However, courts have routinely held that agency actions which are environmentally neutral, maintain the status quo, or are environmentally beneficial do not constitute a major federal action requiring NEPA compliance.[63]

The 10th Circuit considered such an action in *Utah Shared Access All. v. Carpenter.*[64] There, Plaintiff, a motorized access advocacy organization, challenged a BLM decision to impose several restrictions on off-road vehicle ("ORV") use in certain parts of Utah managed by the BLM, alleging that BLM violated NEPA by failing to prepare an EA or EIS.[65] Although the 10th Circuit ruled in favor of the federal defendants on different grounds, it noted that plaintiff failed to demonstrate how the ORV closure constituted a major federal action, noting that "some courts have concluded that actions taken to protect the environment need not be predicated by an EA or an EIS."[66] Therefore, to the extent plaintiff contended that the closure constituted a major federal action, the 10th Circuit declined to address the issue.[67]

Similarly, Plaintiffs fail to show that BLM's suspension decision constitutes a major federal action. Like the ORV closure in *Utah Shared Access*, BLM's decision to suspend the leases in order to conduct additional NEPA review is at the very least environmentally neutral, if

---

[62] *State of Utah v. Babbitt*, 137 F.3d 1193, 1214 (10th Cir. 1998).

[63] *See State of Utah v. Babbitt*, 137 F.3d 1193, 1214 (10th Cir. 1998) ("acquisition of negative easement which by its terms prohibits any change in the status quo does not amount to [a] 'major federal action'") (*citing Sabine River Auth. v. U.S. Dep't of Interior,* 951 F.2d 669, 679 (5th Cir.1992)); *Douglas County v. Babbitt,* 48 F.3d 1495 (9th Cir.1995) ("[w]e find that the NEPA procedures do not apply to federal actions that do nothing to alter the natural physical environment."); *Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1136 (10th Cir. 2006) ("we note that some courts have concluded that actions taken to protect the environment need not be predicated by an EA or an EIS").

[64] 463 F.3d 1125.

[65] *Id.* at 1128.

[66] *Id.* at 1136.

[67] *Id.*

14

not environmentally beneficial. The lease suspensions prohibit any lease activity, including ground disturbing activity. Additionally, the suspensions were issued in order to conduct additional NEPA review on the underlying decision to issue leases. From an environmental perspective, the lease suspensions at the very least maintain the status quo by ensuring that lease operations are suspended while additional NEPA analysis is conducted. However, because the lease suspensions were issued in order to conduct additional NEPA analysis, the Federal Defendant's actions are very much in line with the policy goals of NEPA, namely more informed decision making. Because the lease suspensions do not constitute a major federal action, NEPA is not triggered, and any claim alleging a failure to follow NEPA's procedural requirements necessarily fails.

Plaintiffs cite 40 C.F.R. § 1508.4 to argue that the BLM must at least issue a CX and consider any extraordinary circumstances listed in 43 C.F.R. § 46.215 prior to suspending the leases challenged in this action.[68] However, this argument presumes BLM's action here was a major federal action requiring NEPA compliance.[69] NEPA compliance is predicated on there being a federal action that would cause effects on the human environment.[70] Again, Plaintiffs fail to demonstrate specifically and directly how the suspension of oil and gas leases to conduct additional environmental analysis causes any effects on the human environment.

Additionally, Plaintiffs cite Department Manual § 11.9.B(4), pg. 8, which lists "[a]pproval of . . . suspensions of operations and production" as a listed CX. However, use of the word "approval" indicates an intention that this CX is limited to those situations where a

---

[68] Complaint ¶ 77.
[69] *State of Utah v. Babbitt*, 137 F.3d 1193, 1214 (10th Cir. 1998).
[70] 43 C.F.R. § 46.100.

suspension is requested by a lessee. This reading would be congruent with the other resources cited by Plaintiff, including the TWS Report and Congressional request to GAO, which express particular concerns for the potential abuse of the suspension system by lessees.[71]  If the CX were intended to include suspensions initiated and ordered by the BLM, like those challenged by Plaintiffs, the CX language would not have used the word "approve."[72]

## CONCLUSION

For the reasons stated above, this Court should dismiss this action for want of subject matter jurisdiction.

Respectfully submitted this 4th day of October, 2019.

                                           John W. Huber, United States Attorney

                                           */s/ John K. Mangum*
                                           Assistant United States Attorney

Agency counsel:

C. Andres Ruedas
Attorney-Advisor, Intermountain Region
Office of the Regional Solicitor
U.S. Department of the Interior
125 South State Street, Suite 6201
Salt Lake City, Utah  84138

---

[71] *See* Docket no. 2-3 at 2 ("oil and gas operators have made it a habit of exploiting loopholes known as 'suspensions'"). *See also* Docket no. 2-4 at 3 ("I am concerned that the BLM may be regularly *approving* lease suspension requests for reasons beyond what Congress envisioned . . ..") (emphasis added).

[72] 72 Fed. Reg. 45539 lists CXs for other Departmental actions initiated by the Department as opposed to requested by a non-federal party. These actions do not use the word "approval" in their description. Examples include: "[c]onstruction of perches, nesting platforms, islands, and similar structures for wildlife use . . .." and "[t]emporary emergency feeding of wildlife during periods of extreme adverse weather conditions . . .."

Living Rivers, et al. v. Hoffman, et al.; D. Utah case no. 4:19-cv-00057-DN-PK

List of Exhibits to Defendants' Motion to Dismiss Action

Exhibit 1 – Sample Suspension Letter from March 2018 lease sales

Exhibit 2 – Sample Suspension Letter from September 2018 lease sales

Exhibit 3 – Sample Suspension Letter from December 2018 lease sales

Exhibit 4 - Declaration of Kent Hoffman of Utah BLM, 10-3-2019