THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LIVING RIVERS; and SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>Plaintiffs,<br><br>v.<br><br>KENT HOFFMAN, in his official capacity as Deputy State Director, Division of Lands and Minerals; UNITED STATES DEPARTMENT OF THE INTERIOR; and UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING:<br>[16] MOTION TO DISMISS;<br>AND DENYING:<br>[12] MOTION TO AMEND COMPLAINT AS MOOT<br><br>Case No. 4:19-cv-00057-DN<br><br>District Judge David Nuffer |

This action involves the suspension of oil and gas leases sold in Utah in 2018. Plaintiffs Living Rivers and Southern Utah Wilderness Alliance (together, "SUWA") allege Defendants Kent Hoffman, United States Department of the Interior, and the United States Bureau of Land Management (together, "BLM") violated the National Environmental Policy Act ("NEPA") when BLM failed to prepare an environmental statement prior to suspending the 2018 oil and gas leases. BLM moves[1] to dismiss SUWA's complaint[2] ("Motion"), and SUWA opposes BLM's

---

[1] Defendants' Motion to Dismiss Action ("Motion"), docket no. 16, filed Oct. 4, 2019.

[2] Complaint for Declaratory and Injunctive Relief ("Complaint"), docket no. 2, filed Aug. 2, 2019. SUWA filed its Complaint on August 2, 2019. On September 3, 2019, SUWA filed a Motion to Amend and Supplement Complaint Under FRCP 15(a)(2), (d) and Memorandum in Support ("Motion to Amend"), docket no. 12, filed Sept. 3, 2019. SUWA's Proposed Amended and Supplemented Complaint ("Amended Complaint"), docket no. 12-1, adds fourteen additional leases to the action that were suspended after SUWA filed its original complaint, and provides clarifications of SUWA's claims, but does not change the underlying facts and legal arguments in its Complaint. BLM asserts that it does not oppose SUWA's Amended Complaint if its Motion is denied, but if the Motion is granted, BLM opposes the Amended Complaint as futile. Motion at 2, n. 1. Because the factual and legal analyses are the same in the Complaint and Amended Complaint, this Order cites to the Amended Complaint, acknowledging that because BLM's Motion will be granted, the Motion to Amend will become moot upon entry of this Order.

Motion.[3] After careful consideration of the pleadings, the parties' memoranda, and the relevant legal authority, BLM's Motion is GRANTED.

## BACKGROUND[4]

In March, September, and December 2018, BLM offered, sold, and issued the eighty-two oil and gas leases in southern Utah at issue in this case (the "Leases").[5] SUWA filed protests against BLM's final leasing decisions for all the Leases,[6] and BLM denied each SUWA protest.[7] SUWA appealed the denials of the March and September leases' protests to the Interior Board of Land Appeals ("IBLA").[8]

On March 19, 2019, the United States District Court for the District of Columbia decided *WildEarth Guardians v Zinke*,[9] ruling that the BLM had failed to adequately assess potential impacts of greenhouse gas emissions under NEPA for oil and gas leases sold in Wyoming. The District Court in *Zinke* did not cancel the oil and gas leases outright, but instead remanded the lease sales back to the BLM to perform further NEPA analyses on the leases to address the deficiencies.[10] In response to the *Zinke* ruling, BLM filed a motion with the IBLA to return jurisdiction of the March 2018 SUWA appeal to BLM so BLM could "suspend the appealed leases and conduct additional NEPA analysis."[11] The IBLA granted BLM's motion.[12] SUWA

---

[3] Opposition to Defendants' Motion to Dismiss Action ("Opposition"), docket no. 17, filed Nov. 1, 2019.

[4] This recitation of the facts comes from the Amended Complaint, taking the allegations therein as true, and the parties' exhibits to their memoranda.

[5] Amended Complaint, ¶¶ 52–65 at 14–18.

[6] Amended Complaint, ¶ 53 at 15; ¶ 58 at 16; and ¶ 63 at 17.

[7] *Id.*

[8] Amended Complaint, ¶ 53 at 15; and ¶ 58 at 16.

[9] 368 F. Supp. 3d 41 (D.D.C. 2019).

[10] *Id.* at 85.

[11] Amended Complaint, ¶ 55 at 15.

[12] *Id.*

filed its own motion to withdraw its appeal from the IBLA for the September 2018 leases, which was granted,[13] and BLM suspended the September 2018 leases shortly thereafter.[14] BLM subsequently suspended the December 2018 leases at issue as well.[15]

In BLM's lease suspension decision letters,[16] the BLM explains the suspensions ("Lease Suspensions") will stay in place "until the completion of review under NEPA" and that "[n]o lease operations may transpire on the leases, the terms of the leases are tolled, and lease rentals are suspended while [the suspensions are] in place."[17] Kent Hoffman, Deputy State Director of BLM's Utah Office, avers that:

> Once the BLM finishes its further environmental analysis, as it is committed to doing in the suspension decisions, the BLM will issue new decisions on the suspended leases. With respect to such decisions, the BLM will take one of the following actions: (1) lift the lease suspension; (2) modify lease terms and lift the suspension; or (3) void the lease. Each new decision will be subject to administrative and/or judicial review.[18]

After suspension of the March and September 2018 leases,[19] SUWA filed this action alleging that BLM's failure to comply with NEPA prior to suspending the Leases was arbitrary and capricious in violation of the Administrative Procedure Act ("APA") and therefore subject to judicial review ("Cause of Action").[20]

---

[13] Amended Complaint, ¶ 60 at 17.

[14] Amended Complaint, ¶ 61 at 17.

[15] Amended Complaint, ¶¶ 74–76 at 20.

[16] Sample Suspension Letter from March 2018 lease sales, Exhibit 1 ("Exh. 1"), docket no. 16-1, filed Oct. 4, 2019; Sample Suspension Letter from September 2018 lease sales, Exhibit 2 ("Exh. 2"), docket no. 16-2, filed Oct. 4, 2019; Sample Suspension Letter from December 2018 lease sales, Exhibit 3 ("Exh. 3"), docket no. 16-3, filed Oct. 4, 2019.

[17] Exh. 1 at 1–2; Exh. 2 at 1–2; Exh. 3 at 1–2.

[18] Declaration of Kent Hoffman, Exhibit 4 ("Hoffman Decl."), docket no. 16-4, filed Oct. 4, 2019.

[19] SUWA added the December 2018 lease suspensions in its Amended Complaint, *see supra* note 2.

[20] Amended Complaint, ¶¶ 80–92 at 21–22.

## DISCUSSION

BLM argues that SUWA: (1) lacks constitutional standing to assert its Cause of Action because it has not suffered a redressable injury in fact caused by BLM's Lease Suspensions;[21] and (2) lacks standing[22] because the Lease Suspensions are not major federal actions and so do not require NEPA compliance.[23]

SUWA argues that: (1) it has standing to assert its Cause of Action because it has suffered a procedural injury under NEPA;[24] and (2) the Lease Suspensions are major federal actions requiring NEPA compliance.[25]

Because the Lease Suspensions are not major federal actions, SUWA's claim will be dismissed for lack of jurisdiction, and BLM's constitutional standing argument need not be addressed.

### The 2018 Lease Suspensions in this case are not major federal actions, so NEPA does not apply and SUWA lacks standing to assert its Cause of Action.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim if the court lacks subject matter jurisdiction. "Subject-matter jurisdiction involves a court's authority to hear a given type of case" and the party invoking federal jurisdiction bears the burden of establishing that the court has subject matter jurisdiction.[26]

---

[21] Motion at 6–13.

[22] Motion at 13–16. BLM erroneously categorizes its assertion that the lease suspension decisions are not "major federal actions" as a failure to state a claim instead of an issue of standing. See *State of Utah v. Babbitt,* 137 F.3d 1193, 1214 (10th Cir. 1998). BLM's error is not fatal to its Motion because a court may raise the issue of standing *sua sponte* and must dismiss any actions over which it lacks jurisdiction. See *Defs. of Wildlife v. Everson*, 984 F.3d 918, 945 (10th Cir. 2020).

[23] Motion at 2.

[24] Opposition at 16–25.

[25] Opposition at 9–15.

[26] *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) (citations omitted).

"Article III of the [United States] Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"[27] "'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"[28] "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'"[29] "This is the threshold question in every federal case[.]"[30] Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."[31] "For purposes of ruling on a motion to dismiss for want of standing . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[32]

NEPA does not provide for a private right of action, so plaintiffs alleging a violation of NEPA must "rely on the judicial review provisions of the APA in bringing their claims."[33]

When a plaintiff seeks judicial review under the APA[34], the plaintiff must also meet the statutory standing requirements of the APA. "Plaintiffs must show there has been some 'final agency action' and must 'demonstrate that [their] claims fall within the zone of interests protected by the statute forming the basis of [their] claims.'"[35]

---

[27] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

[28] *Id*. (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

[29] *Id*. (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

[30] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[31] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

[32] *Seldin*, 422 U.S. at 501.

[33] *State of Utah v. Babbitt*, 137 F.3d 1193, 1203 (10th Cir. 1998).

[34] 5 U.S.C. § 702.

[35] *Babbitt*, 137 F.3d at 1203, quoting *Catron County Bd. of Comm'rs v. United States Fish & Wildlife Serv.,* 75 F.3d 1429, 1434 (10th Cir.1996).

NEPA requires federal agencies to file environmental impact statements for "major Federal actions significantly affecting the quality of the human environment."[36] "NEPA requires federal agencies to pause before committing resources to a project and consider the likely environmental impacts of the preferred course of action as well as reasonable alternatives."[37] However, when federal actions maintain the status quo, there is no major federal action, and a NEPA analysis is not required.[38]

In *State of Utah v Babbitt*,[39] the plaintiffs filed suit to enjoin the BLM from preparing an inventory of public lands in Utah that would determine what areas, if any, were suitable for preservation of wilderness, alleging the BLM must comply with NEPA prior to preparing the inventory. The Tenth Circuit ruled that plaintiffs lacked standing because the inventory was not a major federal action requiring NEPA compliance. The opinion noted that the language of the authorizing statute says an inventory "shall not, of itself, change or prevent change of the management or use of public lands,"[40] and found that the inventory "does not constitute an amendment to or revision of a land use plan."[41] The Tenth Circuit also said "if Defendants later utilize the report based on the inventory in recommending wilderness legislation or if they decide to amend the land use plan, they will be required to comply with NEPA . . . [but] at this stage . . . NEPA does not require preparation of an [environmental impact statement]."[42]

---

[36] 42 U.S.C. § 4332(2)(C).

[37] *N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 (10th Cir. 2009) (citing 42 U.S.C. § 4331(b)).

[38] *Babbitt*, 137 F.3d at 1214.

[39] 137 F.3d 1193 (10th Cir. 1998).

[40] *Id*. at 1214 (citing 43 U.S.C. § 1711(a)).

[41] *Id*.

[42] *Id*.

Similar to the inventory in *Babbitt*, the Lease Suspensions prohibit any development or physical changes to the leased land and maintain the status quo while the environmental studies are completed. Further, in *Babbitt*, a NEPA analysis was not required prior to completing the inventory because the inventory on its own did not change the use of public lands. In the same way, the Lease Suspensions by BLM do not change the use of the land, but instead prohibit any changes to the leased land. The NEPA analyses BLM is currently completing will be subject to review once BLM issues its decisions.

SUWA's argument[43] that the Lease Suspensions required at least a Categorical Exclusion[44] (CX) fails because "[a] CX is a *form of NEPA compliance*…"[45] SUWA also argues that BLM's decision to suspend the Leases was a "proposal" for a major federal action.[46] SUWA failed to read the statute closely, which provides that NEPA compliance is required for "proposals for *legislation . . . significantly affecting the quality of human environment*."[47] SUWA fails to provide any argument why the Lease Suspensions should be considered proposals *for legislation*. SUWA's argument also fails for the same reason the Leases are not major federal actions: the Lease Suspensions do not significantly affect the quality of the human environment.

---

[43] Opposition at 13–14.

[44] NEPA compliance requires an agency to prepare an Environmental Impact Statement (EIS) or an Environmental Assessment (EA). *See Catron Cty. Bd. of Comm'rs*, 75 F.3d at 1434. However, in certain circumstances, an agency may decide what types of actions may be categorically excluded from NEPA review. *Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1023 (10th Cir. 2002). BLM has asserted that a CX is a form of NEPA compliance (*see* Exhibit A – BLM NEPA Handbook 1790-1 at 17, docket no. 17-1, filed Nov. 1, 2019), but because the Lease Suspensions are not major federal actions, BLM did not need to prepare *any* NEPA statements.

[45] Opposition at 13 (emphasis added).

[46] Opposition at 9.

[47] 42 U.S.C. § 4332(2)(C) (emphasis added).

Because the Lease suspensions simply maintain the status quo and do not constitute major federal actions, SUWA's Cause of Action asserts a nonexistent right and must be dismissed for lack of standing.[48][49]

### SUWA's argument that BLM should have cancelled the Leases instead of suspending them is outside the scope of its Cause of Action.

SUWA also argues that BLM should have cancelled the leases instead of suspending them because suspension "keep[s] the door open to future development . . . encumbering public lands in a way that significantly restricts SUWA from achieving its goal of securing long-term protection for these public lands."[50]

SUWA asserts one Cause of Action in its Amended Complaint, specifically that BLM should have complied with NEPA prior to suspending the leases.[51] SUWA did not assert a cause of action that the Leases were improperly issued and does not seek to invalidate the Leases themselves. SUWA seeks only to vacate the Lease Suspensions.[52] Therefore, SUWA's arguments that the Leases were improperly issued are not relevant to whether the Lease Suspensions violated NEPA.

Additionally, neither of the two notices of supplemental authority filed by SUWA after briefing for the Motion was complete[53] change the outcome of this Order.[54]

---

[48] *See Babbitt*, 137 F.3d at 1214.

[49] Finding that the 2018 Lease Suspensions in this case do not constitute major federal actions does not mean that lease suspension decisions in other cases with different facts may constitute major federal actions.

[50] Opposition at 7.

[51] Amended Complaint ¶¶ 80–92 at 21–22.

[52] Amended Complaint, Prayer for Relief at 23.

[53] Notice of Supplemental Authority ("First Notice"), docket no. 20, filed Mar. 3, 2020; Notice of Supplemental Authority ("Second Notice"), docket no. 21, filed Apr. 6, 2020.

[54] The First Notice cites two cases. The first case (*W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042 (D. Idaho 2020)) is cited as support for SUWA's argument that suspension and cancellation of oil and gas leases are different outcomes, which assertion is irrelevant to SUWA's Cause of Action. The District of Idaho also invalidated the September 2018 leases. *Id.* at 1090. The second case (*Kane Cty., Utah v. United States*, 928 F.3d 877, 888 (10th Cir.

Finally, while this case may be dismissed without addressing SUWA's constitutional standing to bring its Cause of Action, it is noted that BLM is already providing part of the remedy that SUWA seeks: further NEPA analyses to better assess the environmental impact of the Leases.[55] If SUWA's additional requested relief were granted, namely vacating BLM's Lease Suspensions, the lessees would no longer be prohibited from beginning operations on the leased land.[56] SUWA avoids this argument by saying they want the Leases cancelled outright, not suspended, but cancellation of the Leases is not a remedy that SUWA can absolutely secure under NEPA.[57] The Supreme Court "ha[s] repeatedly emphasized . . . that NEPA does not mandate any particular substantive outcome" but "requires only that the agency take a 'hard look' at the environmental consequences before taking a major action."[58] Protecting the leased land is SUWA's goal,[59] and short of cancelling the Leases, the Lease Suspensions are the next best option for SUWA. SUWA will have the opportunity to protest any Lease decisions BLM issues after completing its NEPA analyses.

## CONCLUSION

BLM suspended the Leases to conduct further NEPA analyses. The Lease Suspensions maintain the status quo, prohibiting any development on the land. Therefore, because the Lease

---

2019)) is cited as support for SUWA's constitutional standing argument, which is not addressed here because SUWA's Cause of Action is dismissed on other grounds. The Second Notice attempts to provide further evidence in support of SUWA's claim that the Lease Suspensions require NEPA compliance. As SUWA knows, DUCivR 7-1(b)(4) allows Notices of Supplemental Authority to "bring new *authorities* to the attention of the court; it is not designed to bring new evidence through the back door." *Kane Cty. (II), Utah v. United States*, No. 2:10-CV-1073, 2020 WL 5016890, at *2 (D. Utah Aug. 24, 2020) (internal citations omitted).

[55] Hoffman Decl. ¶ 3 at 2.

[56] Motion at 12–13.

[57] Even the District Court in *Zinke* did not cancel the leases, but remanded them back to BLM for further NEPA analyses. *Zinke*, 368 F. Supp. at 85.

[58] *Citizens' Comm. to Save Our Canyons*, 297 F.3d at 1022 (internal citations and quotation marks omitted).

[59] Declaration of Roy Bloxham, Exhibit C, docket no. 17-3, filed Nov. 1, 2019.

Suspensions are not "significantly affect[ing] the quality of the human environment,"[60] they are not major federal actions, and BLM did not have to comply with NEPA prior to issuing the Lease Suspensions.

**ORDER**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Action[61] is GRANTED. Plaintiffs' complaint[62] and this action are DISMISSED without prejudice. Plaintiffs' Motion to Amend and Supplement Complaint Under FRCP 15(a)(2), (d) and Memorandum in Support[63] is moot.

Plaintiffs' Notice and Request for Oral Argument[64] is appreciated, but in this case, the request is denied in the interest of time and judicial efficiency.

The clerk is directed to close the case.

Signed June 21, 2021.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[60] 42 U.S.C. § 4332(2)(C).

[61] Docket no. 16, filed Oct. 4, 2019.

[62] Complaint for Declaratory and Injunctive Relief, docket no. 2, filed Aug. 2, 2019.

[63] Docket no. 12, filed Sept. 3, 2019.

[64] Docket no. 19, filed Mar. 3, 2020.